Russell, J.
This action was brought in Clermont county common pleas by the plaintiff, asking for the appointment of a receiver of tbe defendant road, and was subsequently transferred to the Clinton county court of common pleas, for hearing. While the action was pending in Clinton county •common pleas, proceedings were taken in the District Court ■of the United States for the southern district of Ohio, by trustees for certain mortgage bond-holders, to foreclose the mortgage and sell tbe defendant’s road. The road was sold, proceeds all distributed, except enough to satisfy the claim •of Casement, Kelly & Co.,who filed their answer and cross-petition herein, claiming a prior right to the funds so re•served to that of the trustee of the bond-holders, Hon. B. R. Cowan.
The facts, as found on the trial of the cause, are as follows:
On the 26th day of June, 1876, The Cincinnati & Eastern Railway Company, then being engaged in the building of its railroad from tbe city of Cincinnati to Portsmouth, 0,, to secure the payment of seven hundred and sixty bonds, ■amounting to the sum of five hundred thousand dollars, (1500,000,) with which to raise money for the completion of its road, executed and delivered its mortgage deed of that •date, to a trustee upon all its real and personal property, *188 legal and equitable, then owned by it or thereafter to be acquired, as well as the income thereof. That said mortgage deed was afterwards duly recorded in all the counties through which said road was afterwards built, That at the time of making said mortgage said railroad was only partially built, and no part of the line of said road had been located in the county of Scioto. That some time during the month of September, 1882, preliminary surveys were made for the bridge across the Scioto river near the city of Portsmouth, Ohio, and the permanent location of said bridge was made about October, 1862, near the line where the preliminary survey was made in September. Possession of the land on which the piers and bridges were afterwards built, was taken by said railroad company in the month of September, 1882, but no title was obtained by condemnation or purchase until November 2, 1882. That all of said bonds had been issued and sold before September, 1882. That some time in September, 1882, the said railroad company entered into a contract with the firm of Dewey & Campbell to construct a certain portion of its road, which included a bridge across the Scioto river, which required the building of seven piers. That the construction of said seven piers was, on the 21st day of September, 1882, sub-let to the firm of Casement, Kelly & Co., who some time in the month of September, 1882, began the work of constructing the said piers, and continued the same until the latter part of November, 1882, when the firm of Dewey & Campbell abandoned their said contract, owing Casement, Kelly & Co., for a large part of their work. Thereupon, Casement, Kelly & Co., entered into a contract with the railroad company, to complete the said seven piers, and the said company agreed to pay the sum then due from Dewey & Campbell,and for the balance of the work to be done. That Casement, Kelly & Co completed the construction of the said piers in the month -of April, 1883. That the firm of Casement & Kelly, as the *189 survivors of Casement, Kelly & Co., on the 18th day of May, 1883, filed a verified account, according to law, with the recorder of Scioto county, for a mechanic’s lien on the said bridge and piers. That afterwards the said Casement & Kelly brought an action in the court of common pleas of Scioto county, Ohio, on the said claim, and recovered a judgment for the full amount of labor and material furnished in and about the building of the said seven piers. And the said court found that the said Casement & Kelly were entitled to a mechanic’s lien against the said bridge and piers for the same, and that they were entitled to a sale of the whole road. But said court found that the exclusive right to sell said road and determine the priorities of the liens, belonged to the said court in Clinton county. And by consent of parties, ordered “That the question of pirority of liens as between Csaement & Kelly and the mortgage creditors of said railway company, be reserved for consideration and determination by said Clinton county common pleas.” On the hearing of the case before the Clinton common pleas court, a decree was rendered in favor of Casement & Kelly for the amount of their claim,and giving them priority therefor over the trust. And from this decree the trustee, B. R. Cowan, appeals to this court. After the evidence was heard in this court, and before the argument was closed,a motion was made to dismiss the appeal, on the ground that the case is not appealable. This motion is overruled, this court holding that this case is appealable. On the fore-going facts it is claimed by Casement & Kelly,that they' have a prior claim to this fund, and a superior equity to that of the trustee for the bond-holders, because, by the judgment and decree of the Scioto county common pleas court, finding the amount due Casement & Kelly and decreeing the same to be a lien upon the bridge piers and land upon which the bridge stands, and the pleadings then before that court, that this question is res adjudicata.
*190 We cannot agree with counsel on this proposition. Upon examining the record of the Scioto county common pleas,we find that court expressly reserved the question of the priority of liens as between the bond-holders and Casement & Kelly for a decision of the Clinton county court, in the following language in the decree:
“That the question of priority of liens as between Casement & Kelly, and the mortgage creditors of said railway company, be reserved for consideration by said Clinton common pleas.”
From this reservation, it is clear to us that the Scioto ■common pleas did not decide upon the question of priorities, but by the consent of parties, left it an open question to be determined by the Clinton common pleas court. Had this reservation not been made,from the record otherwise before us, we should be compelled to say that the court had not adjudicated on this question,because no finding of priorities is made by that court, and no presumption can be assumed in favor of one or other of the parties who were before that court contending for the priority, The law is well settled in Ohio by our supreme court, in the case of Petersine v. Thomas, 28 Ohio St., 596, as to when a matter will be presumed to have been finally determined, but the determination of the Scioto common pleas does not come within the rule there laid down, Having arrived at the conclusion that the question of priority has not been adjudicated, but is before us for a determination on the facts found by us from the evidence and pleadings, we proceed to the second claim made by Casement & Kelly, that their claim is prior in noint of time to the claim of the trustee, because, they say, their claim dates from September 21st, 1882, by reason of their contract with Dewey & Campbell as sub-contractors, and after the abandonment of the contract by Dewey & Campbell, their contract made the latter part of November, 1882, with the company,to complete the contract of Dewey & *191 Campbell to finish these seven piers, and that the railway company did not obtain any title, legal or equitable, to the land upon which these piers were built, until the 2nd day of November, A. D., 1882. And that, when the railway company did get title to the land, these piers were being built upon it, and the company took it cum onere; That, therefore, Casement & Kelly’s claim is prior to that of the ■trustee. The evidence in the case shows that the railway company took possession of the land oh which these piers stand, some time in September, 1882, ran their preliminary-survey, and that afterwards, November 2, 1882, -it got the legal title to this land, and that Casement & Kelly did not have any contract with the railway company- until the latter part of November, 1882. We think the mortgage attached to. the equity of the company that it obtained by its possession in the early part of September, 1882, and would be prior in time to the contract made by Casement & Kelly with Dewey & Campbell; but, if this were not the fact, we are satisfied that Casement & Kelly could not have a lien as of date of 21st of September, 1882, on a contract made with the company in the latter part of November, 1882.
Where the right of third parties intervened, as in this case, the right of the trustee — however it might be that, as between the company and Casement & Kelly, the company might be estopped from denying the right of Casement & Kelly, — yet the trustee cannot be prejudiced by a contract of that kind.
The statute is plain. The contract must be made with the owner, and shall date from the first item, meaning the first item under that contract — not under any other person’s, contract.
When certain work or materials are furnished under a contract with the owner, the statute fixes the lien and should *192 be liberally construed by the courts. But the courts have no power to substitute a contract made with another contractor and the owner, for one made by these claimants long afterwards with the owner.
The lien is not created by contract, but by statute; and the statute only creates a lien when certain other things exist, to-wit: work and materials furnished under a contract with the owner. Then the statute applies. Therefore it follows that work done for the owner and materials furnished without a contract with the owner, but on a contract with some other party than-the owner, can not create any lien against the property of the owner. Neither can the owner make a contract that will ante-date the making of the same, to create a lien superior to some other lien, because the lien is not a creature of contract, but of statute.
Therefore it follows that the bond-holders have a lien from September, 1882, on the equity of the company, and-a lien on the legal title of the company as of date of November 2, 1882, and that Casement & Kelley’s lien, dates as of the last of November, 1882, unless the third proposition of counsel for Casement & Kelly is the rule of law to be applied to this case, to-wit: that the bridge structure and piers are no part of the road of the company, and do not pass under the mortgage as after-acquired property until finally completed and attached to the road. That after-ac quired property passes by a mortgage of the kind given in this case, is no longer an open question in this state. See Cooper & Clark v. Wolf et al., 15 Ohio St., 523.
When does the bridge and piers become a part of the road so as to pass under the mortgage in this case — when they are being constructed on the line of the road and on the land of the company as a part of its line and road-way, or not until their final completion and attachment to the road to be used in connection with the main line?
Counsel for Casement & Kelly, contend that these piers *193 do not become part of the road, so as to pass under the mortgage,until finally attached and made a part of the road.
. We can not agree with counsel on this proposition. We are of the opinion, that as soon as the railway company took' possession of the land on which these piers were to be placed, the company thereby acquired an equity in the land, which passed at once under the mortgage, to the mortgagee, and that when Casement & Kelly commenced to construct these piers, they did so on land already mortgaged to the trustee, under the clause as to after-acquired property. But. it is strenuously urged by counsel, that in the case of Bowman, trustee, v. Smith Bridge Co., 1 C. C. Rep., 64, the . circuit court held, that a bridge did not become a part of the road until it is attached to and made a part of the road, and that,therefore, these piers and bridge did not pass under the mortgage until so attached, and that they were not. attached until long after the lien of Casement & Kelly had attached, and, therefore, the railway company, took them with the burden of the lien of Casement & Kelly upon it. ■. •
We cannot agree with counsel in their views of what the court decided in that case. The learned judges, in deciding that case, used language that might be so understood, but we must look at the facts of that case to enable us properly to construe the language there used.
The learned judge says,on page 66:
“Starting then with these two propositions, a third is un- , avoidable, namely, a railroad bridge does not become an accession to the railroad so as to become a part of the road, in such a sense as to be inseparable from it.” The learned judge was speaking with reference to the statute. That under the statute, the bridges were not so attached that they could not be separated from the railroad so as to create a lien upon them separate from the road. That was the only question in that case in controversy, as the Smith Bridge Company’s lien was prior in point of.time to the mortgage.
J. TV. Bannon and J. J. Glidden, for Casement & Kelly
A. C. Thompson, "Walter A. DeCamp, and Thomas Hollister, for B. R. Cowen, trustee.
We have examined the other authorities submitted by-counsel, which it is claimed support his proposition.
'We do not think counsel is supported by them. We think the piers and bridge, from the beginning of the same, were covered by this mortgage. 1 Jones on Mortgages, secs.'152, 153,' and many other authorities that might be cited.
• It is finally claimed, that the equity and justice in this case is with Casement & Kelly, they having improved the' property of the mortgagees, and are only asking 'to have, out of 4his-fund, what théy have added to it, and therefore' the court ought to give them what they claim. There is' great force in this argument, and it would seem but just and equitable to take this view; but we are met by the law, as decided by courts of the highest authority, to the con-' tiary. And when we reflect but for a moment, courts are not authorized to make contracts for parties, but simply to construe them when made. And however hard it may be upon litigants that they have not made the contracts they should have made, courts can not make new ones for them.'
The decree in this case will be for the trustee, for the fund and costs.